**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| SARA ANN EDMONDSON, | |
| Plaintiff, | Civil No. 13-7704 (RMB/JS) |
| v. | **OPINION** |
| LILLISTON FORD, INC., et al., | |
| Defendants. | |

APPEARANCES:

Sara Ann Edmondson
71 Rainbow Trail
Pittsgrove, New Jersey 08318
        *Pro Se* *Plaintiff*

Kevin J. Thornton, Esq.
Cooper Levenson P.A.
1125 Atlantic Avenue, 3rd Floor
Atlantic City, New Jersey 08401
        *Attorney for Defendant Lilliston Ford, Inc.*

**BUMB**, UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court upon Plaintiff Sara Ann
Edmondson's "Motion to Vacate Arbitration Award Pursuant to
9 U.S.C. § 10(a)(1) Corruption, Fraud or Undue Means" [Docket
No. 87], Defendant Lilliston Ford Inc.'s Cross-Motion
"Requesting An Order to Show Cause; to Strike Plaintiff's
Submissions; and Confirm the Award of Arbitration pursuant to
9 U.S.C. § 1 et seq." [Docket No. 93], and Plaintiff's "RESPONSE

TO COURT'S MARCH 23, 2017 ORDER & MOTION FOR STAY PENDING

APPEAL" [Docket No. 108]. For the reasons set forth herein,

Defendant's Motion to Confirm the Arbitration Award is granted,

in part, and Plaintiff's Motion to Vacate the Arbitration Award

is denied. The Arbitration Award entered on December 27, 2016

is hereby confirmed. To the extent that Plaintiff's "RESPONSE

TO COURT'S MARCH 23, 2017 ORDER & MOTION FOR STAY PENDING

APPEAL" may be construed as a motion to stay this action or the

Arbitration Award pending appeal, the motion is denied as moot.

Defendant seeks further relief from this Court surrounding

the alleged unauthorized practice of law by Plaintiff's

daughter, Tracee Edmondson, in violation of N.J.S.A. § 2C:21-22,[1]

District of New Jersey Local Civil Rule 101.1, and New Jersey

Court Rule 1:21-1. Specifically, Defendant seeks an Order to

Show Cause "in accordance with this Court's prior practice with

Sara Ann Edmondson's daughter [Tracee Edmondson] for the

unauthorized practice of law" and an Order striking any

submissions by Plaintiff that were prepared by Tracee Edmondson.

Def. Opp. Br. at 1-2, 9-12 [Docket No. 92]; Def. Notice of

Cross-Motion [Docket No. 93]. These requests are denied.

However, because there is sufficient evidence before this Court

---

[1] N.J.S.A. § 2C:21-22 provides, in relevant part: "A person
is guilty of a crime of the fourth degree if the person
knowingly engages in the unauthorized practice of law."

to demonstrate conduct on the part of Tracee Edmondson violative of N.J.S.A. § 2C:21-22, consistent with this Court's ethical obligations, the Court will forward the matter to the appropriate law enforcement agencies with jurisdiction over such allegations.[2]

## I.   FACTUAL AND PROCEDRUAL BACKGROUND

This protracted litigation, spanning more than three years, involves a dispute regarding Plaintiff's purchase of a 2012 Ford Focus from Lilliston.  As part of that purchase, Edmondson agreed to trade in her 2004 Lincoln LS and receive an $800.00 credit from Lilliston.  The parties executed a Retail Installment Agreement (the "Agreement").  Lilliston thereafter delivered the Ford Focus to Edmondson.  Edmondson alleges that shortly after the purchase, she experienced mechanical difficulties with the car.  After multiple attempts to repair the car, she tried to return it but Lilliston would not accept it.  Lilliston also demanded that she turn over the title to the 2004 Lincoln or reimburse the company for the $800.00 vehicle trade-in credit, but Edmondson refused.  Lilliston thereafter filed a lawsuit in the Superior Court of New Jersey, Law

---

[2] In addition to this Court's own observations that Plaintiff appeared not to be writing her own papers, see, e.g., Mem. Order at 3 [Docket No. 36], Defendant has also set forth convincing evidence of Tracee Edmondson's unauthorized practice of law.  See, e.g., Def. Br. at 3 [Docket No. 92]; Hughes Cert. Exs. 5-11 [Docket No. 92-2].

Division, Special Civil Part, Salem County, and Edmondson counterclaimed. In January 2013, the state court action was dismissed without prejudice. Def. MTD Ex. 5 [Docket No. 6-2].

Edmondson filed a demand for arbitration with the American Arbitration Association ("AAA") in October 2013. On November 8, 2013, the AAA stated to the parties that, per the parties' Agreement, "it appears [Lilliston] is responsible for payment of the Consumer's portion of the filing fee in the amount of $200.00 in addition to the fees attributable to the Business under the rules, for a total of $3,200.00." Nov. 8, 2013 AAA Letter at 15 [Docket No. 1-2]. On November 19, 2013, the AAA declined to arbitrate the case, however, because Lilliston had not paid the required arbitration fees. Nov. 19, 2013 AAA Letter at 22 [Docket No. 1-2]. The AAA also requested that Lilliston "remove the AAA name from its arbitration clause so that there is no confusion to the public regarding our decision." Id.

On December 20, 2013, Edmondson filed a Complaint with this Court alleging claims under the Magnuson-Moss Act and the Odometer Act, as well as several state law claims. Defendant filed a Motion to Dismiss--which should have been a Motion for Judgment on the Pleadings because an Answer had already been filed--contending, in relevant part, that there was no controversy between the parties because the parties had settled

4

their differences in state court.  Def. MTD [Docket No. 6].

Lilliston represented to this Court that the parties had reached

a settlement in the state court action, whereby the dealership

withdrew its claims without prejudice on the condition that

Edmondson execute a form stating that the title to the trade-in

vehicle had been lost.  Edmondson disagreed that there was a

settlement.  According to her, the parties mutually agreed to

withdraw their claims to engage in arbitration.

Prior to oral argument on the Motion to Dismiss, Edmondson

filed a Motion to Compel Arbitration under the Federal

Arbitration Act ("FAA") [Docket No. 14].  At oral argument, the

Court questioned its subject matter jurisdiction in addition to

whether the case had settled.  In attempting to resolve the

foregoing issues, the Court imprudently denied Plaintiff's

Motion to Compel Arbitration--as opposed to administratively

staying the motion--so that it could determine, first, whether

it had subject matter jurisdiction and, second, whether the case

had in fact settled before the state court [Docket No. 16].

Plaintiff appealed that Order.  The Third Circuit vacated the

Court's denial of the Motion to Compel but acknowledged the

Court's need to first address its subject matter jurisdiction.

The Third Circuit also indicated "there is at least a reasonable

possibility that some of the issues presented are arbitrable."

3d Cir. Opinion at 6 [Docket No. 44-2].

On remand, this Court--after a series of prolonged proceedings, including three motions for recusal by Plaintiff [Docket Nos. 32, 49, 51]--concluded that Plaintiff had sufficiently, although barely, pled a violation of the federal Odometer Act, 49 U.S.C. § 32701, et seq., giving this Court jurisdiction to hear the Motion to Compel [Docket No. 61].[3] Additionally, after a difficult time with the parties, the Court determined that, contrary to Defendant's representations to this Court, no settlement had been reached before the state court.

At every turn of the litigation before this Court, Plaintiff vigorously sought to compel arbitration pursuant to the arbitration provision of the Agreement. In relevant part, the provision provides:

> The parties to this agreement agree to arbitrate any claim, dispute, or controversy, including all statutory claims and any state or federal claims, that may arise out of or relating to the sale or lease identified in this agreement . . . . The arbitration shall be conducted in accordance with the rules of the American Arbitration Association before a single arbitrator, who shall be a retired judge or attorney . . . .

Agreement at 6 [Docket No. 1-1].

The Court granted Plaintiff's motion to compel arbitration on June 22, 2015 and administratively stayed the matter pending the arbitration [Docket No. 61]. The parties were unable to

---

[3] The FAA does not independently confer subject matter jurisdiction. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 n. 32 (1983); see also 9 U.S.C. § 4.

arbitrate with the AAA and Plaintiff filed a motion for summary
judgment on September 3, 2015, in which Plaintiff sought the
entry of judgment in her favor on each of her ten substantive
counts as set forth in her Complaint [Docket No. 67].

At oral argument, on January 27, 2016, Plaintiff expressed,
once again, her desire to arbitrate her claims.  In light of
this and because there was never a dispute that all the claims
and issues were within the scope of the Agreement's arbitration
provision, the Court ordered the parties to arbitration and,
initially, to agree on the selection of an arbitrator [Docket
No. 74].  The parties commenced the arbitration process, but
they could not agree on the final selection of the arbitrator.
Plaintiff thereafter moved for an order enforcing the specific
provision of the Agreement that the arbitration must be "in
accordance with the rules of the American Arbitration
Association" and conducted by an AAA arbitrator, not a private
mediator selected by the parties [Docket No. 75].[4]  The Court
then ordered Defendant to show cause why the Agreement did not
require the parties to submit their disputes to arbitration

---

[4] As set forth supra, according to the parties' Agreement,
the arbitration was to be conducted in accordance with AAA's
Rules.  The AAA Consumer Arbitration Rules provide that, when
the parties' contract states that the dispute will be arbitrated
under the AAA's rules, the parties thereby agree that the AAA
will administer the arbitration.  See Mar. 3, 2016 Opinion at 4
[Docket No. 76].

conducted by the AAA or by an individual or organization authorized by the AAA and Defendant to pay the costs associated with the arbitration [Docket Nos. 76, 77]. On March 8, 2016, Defendant agreed to arbitrate using the services of the AAA [Docket No. 80].[5] Thus, as set forth in Defendant's letter, Lilliston agreed to arbitrate before the AAA--as it was required to do in the first instance (although no party raised this issue initially). To do so, Lilliston would have to pay the requisite AAA fees associated with an AAA arbitration.[6]

The arbitration proceeding was held on December 13, 2016. On December 27, 2016, the AAA arbitrator issued an arbitration award (the "Arbitration Award") dismissing all of Edmondson's claims and ordering Edmondson to return title to the 2004 Lincoln to Lilliston within 14 days or be subject to a fee of

---

[5] Perplexingly, Edmondson filed an "Intent to File Mandamus Petition," complaining of this Court's "partiality" by extending "yet another courtesy" to Defendant [Docket No. 78]. Two days later, she filed a copy of a Mandamus petition [Docket No. 82].

[6] Edmondson appears to have taken the position that the Agreement was void ab initio because Lilliston did not have a relationship with the AAA at the time of the Agreement. Even assuming that is so, that is neither here nor there. The Agreement provided that the parties arbitrate their dispute before the AAA. Whether Lilliston owed fees to the AAA or was in good standing with the AAA is between Lilliston and the AAA. Plaintiff sought to enforce the AAA arbitration provision, as written in the Agreement, and prevailed.

$35.00 a day for its storage at Lilliston's dealership.  The ruling provided as follows:

> Any and all claims by Respondent [Edmondson] against Claimant [Lilliston] are hereby dismissed, with prejudice, as the Respondent failed to prove any cause of action upon which relief could be granted;
>
> Respondent is hereby Ordered to execute such documents as shall vest clear title to the 2004 Lincoln in the Claimant within fourteen (14) days of entry of this Final Award; or
>
> If Respondent shall fail to execute such documents then she shall refund the $800.00 trade-in value of the 2004 Lincoln and remove it from Claimant's property and premises within thirty (30) days of the entry of this Final Award; and
>
> If Respondent shall fail to make such payment and remove the 2004 Lincoln from Claimant's premises within thirty (30) days of the entry of this Final Award then she shall pay Claimant a storage fee of Thirty-Five ($35.00) per day beginning on the thirty-first (31st) day after the entry of this Final Award until clear title is obtained by Claimant or the 2004 Lincoln is removed from Claimant's property and premises; and
>
> Claimant shall be entitled to apply for an Order in a Court of competent jurisdiction granting clear title to the 2004 Lincoln which is the subject matter of this Arbitration; and
>
> Respondent shall be responsible to reimburse Claimant for reasonable attorney's fees and costs of Court incurred on account of enforcement of this Final Award to obtain clear title to the 2004 Lincoln and any other necessary enforcement this Final Award; and
>
> Other than as set forth in the proceeding paragraphs, each party shall pay their own attorney's fees and costs of suit.

Arbitration Award at 2-3, Hughes Cert. Ex. 18 [Docket No. 92-4].

Two days later, on December 29, 2016, Plaintiff moved to vacate the Arbitration Award before this Court [Docket No. 87]. To this day, Edmondson has refused to turn over the title to the 2004 Lincoln or reimburse Lilliston the $800.00 vehicle trade-in credit and remove the vehicle from Lilliston's lot where it has been stored since 2012.

## II.  <u>LEGAL ANALYSIS</u>

Pursuant to 9 U.S.C. § 9, after an arbitration award is entered, the Court must judicially enforce the award "unless the award is vacated, modified, or corrected . . . ." <u>Hall St. Assocs., L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576, 587 (2008). "There is a strong presumption under the Federal Arbitration Act, 9 U.S.C. <u>et seq.</u>, in favor of enforcing arbitration awards." <u>Brentwood Med. Assocs. v. United Mine Workers of Am.</u>, 396 F.3d 237, 241 (3d Cir. 2005) (citing <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 24–25); <u>see also</u> <u>Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.</u>, 817 F.3d 857, 861 (3d Cir. 2016).

Pursuant to 9 U.S.C. § 10(a), there are only four grounds upon which an arbitration award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

>    (3) where the arbitrators were guilty of misconduct in
>    refusing to postpone the hearing, upon sufficient cause
>    shown, or in refusing to hear evidence pertinent and
>    material to the controversy; or of any other misbehavior
>    by which the rights of any party have been prejudiced;
>    or
>
>    (4) where the arbitrators exceeded their powers, or so
>    imperfectly executed them that a mutual, final, and
>    definite award upon the subject matter submitted was not
>    made.

9 U.S.C. § 10(a).

In general, Plaintiff claims that the Arbitration Award was procured by corruption, fraud, or undue means. At oral argument, the Court sought to elicit a better understanding of Plaintiff's claims. Despite this Court's best efforts to do so, Plaintiff could not answer this Court's most basic questions. Instead, Plaintiff simply referred the Court to her papers, refusing to elaborate. This conduct naturally confirmed the Court's continued suspicions that Tracee Edmondson had written Plaintiff's submissions.

As best as this Court can determine, they are as follows, each of which is woefully deficient to warrant vacating the Arbitration Award. First, Edmondson contends that the arbitrator was biased against her because one of the e-mails he sent to the parties was addressed to "Counsel" (referring to counsel for Lilliston) and "Ms. Lilliston." See Dec. 1, 2016 E-mail, Hughes Cert. Ex. 13 at 2 [Docket No. 92-4]. From this-- the reference to Ms. Lilliston--Plaintiff leaps to the unfounded

conclusion that the arbitrator was engaging in ex parte
communications with Lilliston, even though Edmonson had received
the e-mail in question.  Despite the obvious explanation--that
this was a typographical error meant to say "Ms. Edmondson"--the
arbitrator nonetheless admitted his typographical error and
apologized for it.  Dec. 2, 2016 E-mail, Hughes Cert. Ex. 17
at 9 [Docket No. 92-4].  Moreover, even after Plaintiff
requested the arbitrator's recusal, the AAA reaffirmed the
arbitrator's neutrality and denied her request.  Dec. 12, 2016
Letter, Hughes Cert. Ex. 15 [Docket No. 92-4].

     Second, Edmondson points to an alleged improper ex parte
communication between counsel for Lilliston and the arbitrator.
However, the record evidence demonstrates that the arbitrator
did not have an ex parte communication with Defendant's counsel,
Mr. Hughes.  See June 9, 2016 E-mail, Hughes Cert. Ex. 10
[Docket No. 92-2]; June 6, 2016 E-mail, Pl. Motion Ex. B [Docket
No. 87].  Rather, the arbitrator sent an e-mail to counsel and
Plaintiff explaining that in, "accordance with AAA Rules and
procedures, I am afraid I cannot deal directly with you
[counsel] to avoid the appearance of ex parte communication."
June 6, 2016 E-mail, Pl. Motion Ex. B.  As the documents bear
out, and as explained by counsel for Lilliston at oral argument,
counsel attempted to reach the arbitrator to determine the
procedure for requesting adjournments in light of his

adversary's <u>pro se</u> status.  There was no direct contact with the arbitrator, and the arbitrator indicated as such.  There is simply no evidence of corruption or collusion.

Finally, it appears that Edmondson argues that because Lilliston did not pay the requisite fees to the AAA, the arbitration provision of the Agreement is unenforceable and was not enforceable <u>ab initio</u>.  It is difficult to understand what Plaintiff seeks to gain from such an argument other than a second bite at the apple.  Plaintiff sought for years to compel arbitration, as detailed above.  The parties' initial efforts were not pursuant to the rules governing the AAA and this Court, upon becoming aware of same, ordered the arbitration to be conducted by the AAA.  That the initial efforts at arbitration failed prior to this lawsuit because Lilliston had failed to maintain its fees is of no moment because, ultimately, upon Order of this Court, Lilliston paid whatever fees it owed and the AAA arbitration ensued.

The FAA dictates that when a party seeks to compel arbitration, the "court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.  The Court was satisfied that there was a valid and binding

arbitration provision in the parties' Agreement that covered
Plaintiff's claims.  Indeed, Plaintiff sought to enforce that
provision, and Defendant never argued that it was not a valid
provision.  Moreover, the scope of the arbitrable issues has
never been in dispute.

Plaintiff appears to take the words "refusal to perform"
the arbitration from the statute out of context.  As best the
Court can discern, seizing upon the statutory language out of
context, Plaintiff seems to argue that 9 U.S.C. § 4 dictates
that if a party refuses to perform under an arbitration clause,
the "Court shall proceed summarily to the trial thereof."  Thus,
it appears, Plaintiff's argument is that, because Lilliston did
not perform by failing to pay the AAA fees, Plaintiff's
substantive claims, as set forth in her Complaint, should have
been summarily decided by this Court.

Plaintiff is mistaken.  Section 4 governs the role a jury
(or a court if no jury is demanded) plays.  The jury must
determine whether an agreement in writing to arbitrate was made
and, if so, whether there was a "default" in proceeding under
the arbitration provision.  9 U.S.C. § 4; see also Devon
Robotics, LLC v. DeViedma, 798 F.3d 136, 144 (3d Cir. 2015)
("where 'the party opposing arbitration can demonstrate, by
means of citations to the record, that there is a genuine
dispute as to the enforceability of the arbitration clause, the

court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same, as Section 4 of the FAA envisions.'") (quoting Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 766 (3d Cir. 2013)) (emphasis added). Stated differently, Section 4 governs trial on factual issues dealing with arbitrability only, i.e., whether an agreement to arbitrate was made that covers the claims in question or whether there is a dispute as to which party is refusing arbitrate. Neither of those issues was in dispute in this case and, as a result, the Court was not required to have a jury resolve them. Thus, Edmondson's apparent argument that the Arbitration Award should be vacated because she should have been allowed to go to trial (or even granted summary judgment) before this Court on her underlying claims given Lilliston's "refusal" to arbitrate has no merit.[7] Ultimately, Edmondson and Lilliston proceeded to arbitration before the AAA and the arbitrator issued an award.

---

[7] The Court notes that a party's failure to arbitrate when ordered to do so faces contempt proceedings, not a summary trial as Plaintiff contends. See F.T.C. v. Lane Labs-USA, Inc., 624 F.3d 575, 582 (3d Cir. 2010) (contempt finding appropriate where party knowingly disobeys valid court order); see also Evans v. Affiliated Computer Servs. Inc., --- F. App'x ----, 2017 WL 1020365, at *1 (9th Cir. Mar. 16, 2017) (affirming district court's decision to hold party in contempt where party violated court's order to arbitrate); InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003) (noting that district court may "adjudge a recalcitrant party in contempt" for failure to comply with order to arbitrate).

The Court sees no basis to vacate that award. Accordingly, the Court denies Plaintiff's Motion to Vacate the Arbitration Award and grants Defendant's Motion to Confirm the Arbitration Award.

### III. ATTORNEYS' FEES REQUEST

The Arbitration Award provides that "Respondent [Edmondson] shall be responsible to reimburse Claimant for reasonable attorney's fees and costs of Court incurred on account of enforcement of this Final Award to obtain clear title to the 2004 Lincoln and any other necessary enforcement [of] this Final Award." Arbitration Award, Hughes Cert. Ex. 18 at 2. On March 21, 2017, Defendant's counsel submitted a certification setting forth Defendant's request for attorneys' fees and costs pursuant to this section of the Arbitration Award. Hughes Cert. [Docket No. 103].

On March 23, 2017, the Court directed Plaintiff to respond to counsel's certification by setting forth any specific objections to the reasonableness of Defendant's requested attorneys' fees and costs [Docket No. 104]. Plaintiff failed to do so. Instead, Plaintiff wrote: "I disagree with any and all certifications made by Defendant for costs or fees associated with defending an arbitration award that was arbitrary and

capricious and secured through fraudulent, corrupt and collusive means."  Mar. 30, 2017 Pl. Letter [Docket No. 108].[8]

In support of its application for attorneys' fees and costs, Defendant has provided a sworn Certification from its attorney at the time, Mr. Hughes, as well as all relevant time records and invoices.  For the reasons set forth in further detail below, the Court finds that the fees and costs requested are adequately supported.  "[O]nce the fee petitioner 'submit[s] evidence supporting the hour worked and rates claimed,' the party opposing the fee application has the burden to challenge the reasonableness of the requested fee."  McKenna v. City of Philadelphia, 582 F.3d 447, 459 (3d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); citing Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)) (addressing attorneys' fees in statutory fee-shifting context).  To meet this burden, the party opposing the fee award must set forth its

---

[8] Plaintiff captioned this response "PLAINTIFF RESPONSE TO COURT'S MARCH 23, 2017 ORDER & MOTION FOR STAY PENDING APPEAL". It is unclear what Plaintiff requests from this Court.  In any case, Plaintiff's appeal was dismissed by the Third Circuit Court of Appeals on April 7, 2017 for lack of appellate jurisdiction as this Court had not yet entered an order and final judgment following oral argument on March 10, 2017. 3d Cir. Order [Docket No. 109].  As Plaintiff's appeal has been dismissed, to the extent Plaintiff's request may be construed as a motion to stay the case or the Arbitration Award pending appeal, the Court denies Plaintiff's request as moot.  If appropriate, Plaintiff may renew her motion at a later date. Any such motion should be properly supported with references to the relevant legal standards.

challenges, "by affidavit or brief with sufficient specificity to give fee applicants notice, [to] the reasonableness of the requested fee." Eichenlaub v. Twp. of Indiana, 214 F. App'x 218, 223 (3d Cir. 2007) (citing Rode, 892 F.2d at 1183).

"Once the adverse party raises sufficiently specific objections to the fee request, a district court 'has a great deal of discretion to adjust the fee award in light of those objections.'" Taylor v. USF-Red Star Exp., Inc., 212 F. App'x 101, 111 (3d Cir. 2006) (quoting Rode, 892 F.2d at 1183). However, this Court may not reduce the attorneys' fees and costs requested by Defendant sua sponte based on factors not raised by Plaintiff. Id. ("But a district court may not make sua sponte reductions to fee requests based on material facts not raised at all by the adverse party, because that would deprive the fee petitioner of notice of the need to offer evidence of reasonableness . . . ."); accord McCutcheon v. Am.'s Servicing Co., 560 F.3d 143, 150 (3d Cir. 2009) ("The district court cannot decrease a fee award based on factors not raised at all by the adverse party."). Thus, in assessing Defendant's fee application, this Court "may not award less in fees than requested unless the opposing party makes specific objections to the fee request." United States v. Eleven Vehicles, Their Equip. & Accessories, 200 F.3d 203, 211 (3d Cir. 2000); accord McKenna, 582 F.3d at 459 ("A district court should not 'decrease

a fee award based on factors not raised at all by the adverse party.'") (quoting Bell v. United Princeton Properties, Inc., 884 F.2d 713, 720 (3d Cir. 1989)).

Despite being explicitly afforded an opportunity to do so, Plaintiff has not presented any specific objections or challenges to the requested fees and costs. See Mar. 23, 2017 Order [Docket No. 104]. Nonetheless, the Court is cognizant of the fact that "the awarding of an attorney's fee is a judicial action and, regardless of the parties' indifference to it, a court need not lend its imprimatur to an inappropriate order merely because there was no objection to its entry." McKenna, 582 F.3d at 459. Accordingly, even though Plaintiff did not articulate any specific objections or challenges to Defendant's fee request, the Court reviews the request for reasonableness and appropriateness before awarding Defendant attorneys' fees and costs incurred in connection with enforcement of the Arbitration Award, as provided by the arbitrator.

Defendant seeks $10,597.50 in attorney's fees and $111.89 in costs incurred in connection with enforcing the Arbitration

Award, for a total of $10,709.39.  Hughes Cert. ¶¶ 12, 14.[9]

Mr. Hughes's hourly rate on this matter is $450.00 and his

partner Robert E. Salad's hourly rate is $750.00.  Id. ¶ 9.  The

time records also reveal one entry from Laura Krah Newton billed

at a rate of $195 per hour.  Mar. 8, 2017 Invoice, Hughes Cert.

Ex. A at 12 [Docket No. 103].

According to the time records submitted, on January 5,

2017, Mr. Salad billed 0.20 hours for analyzing issues related

to enforcement of the Arbitration Award.  The same day,

Mr. Hughes billed 0.70 hours drafting a letter to Plaintiff and

reviewing the Arbitration Award.  The following day, Mr. Hughes

billed 0.90 hours reviewing and analyzing Plaintiff's Motion to

Vacate the Arbitration Award and preparing his notice of

appearance.  On January 11, 2017, Mr. Hughes billed 0.80 hours

reviewing Plaintiff's supplemental submission, titled "PLAINTIFF

RESPONSE TO DEFENDANT OPPOSITION TO MOTION TO VACATE ARBIRTAION

AWARD" [Docket No. 90].  On January 18, 2017, Mr. Hughes billed

a total of 3.00 hours, consisting of 2.20 hours reviewing and

analyzing Plaintiff's submissions and conducting legal research

---

[9] In his Certification, Mr. Hughes states that the total
amount of attorney's fees and costs incurred by Defendant in
connection with enforcement of the Arbitration Award is
$11,934.39.  Hughes Cert. ¶ 8.  This total amount appears to
erroneously include an additional $1,225 entry, which counsel
wrote off his time records.  See Feb. 3, 2017 Account Summary,
Hughes Cert. Ex. A at 13 [Docket No. 103].

for Defendant's cross-motion; 0.20 hours for a telephone conference with Plaintiff; 0.30 hours drafting a letter to the Clerk of the Court requesting an automatic extension of the return date of a dispositive motion; and 0.30 hours reviewing the status of the return date and documents for inclusion in Defendant's opposition brief.  Plaintiff has not set forth any specific objections to these billing entries.  Nonetheless, the Court has independently reviewed counsel's time records and any corresponding submissions to the Court and finds the time billed to be reasonable and adequately supported.

In connection with the preparation and submission of Defendant's opposition to Plaintiff's motion and Defendant's cross-motion, counsel billed an additional 9.9 hours. Specifically, on February 6, 2017, Mr. Hughes billed 5.40 hours conducting legal research and drafting Defendant's opposition to Plaintiff's Motion to Vacate the Arbitration Award and Defendant's Cross-Motion to Confirm the Arbitration Award and for an Order to Show Cause, as well as drafting the corresponding notice of motion.  Mr. Hughes also billed 3.20 hours reviewing and analyzing the exhibits attached to Defendant's opposition brief and preparing his certification in support of Defendant's opposition brief.  Ms. Newton also billed 0.50 hours researching how to obtain corporate status reports. The following day, on February 7, 2017, Mr. Hughes billed 0.80

hours corresponding with the Clerk of the Court and reformatting Defendant's cross-motion to conform to the Clerk's instructions. Once again, Plaintiff has not presented any challenges or objections to these billing entries. The Court has reviewed these entries as well as the submissions to the Court to which the entries correspond and finds the attorneys' fees incurred to be reasonable and properly documented.

In connection with the hearing on Plaintiff's Motion to Vacate the Arbitration Award and Defendant's Cross-Motion to Confirm the Arbitration, which the Court scheduled for March 10, 2017, Mr. Hughes billed a total of 7.7 hours. Specifically, on March 9, 2017, Mr. Hughes billed 2.00 hours preparing for the oral argument. He then billed 4.00 hours on March 10, 2017 for attending the oral argument before this Court, travelling to and from Camden, New Jersey, and for a post-hearing conference with his client. The Court notes that the hearing lasted approximately thirty minutes and that counsel's office is in Atlantic City, New Jersey, at least an hour's drive each way from the courthouse in Camden, New Jersey. See Mar. 10, 2017 Minutes [Docket No. 100]. That same day, counsel billed 0.20 additional hours reviewing Plaintiff's notice of appeal and 0.80 hours researching Defendant's legal options in light of

Plaintiff's appeal.[10]  Two days later, on March 12, 2017,

Mr. Hughes billed 0.70 hours preparing a response to this Court

regarding Plaintiff's premature notice of appeal.  This letter

was submitted to the Court on March 13, 2017 [Docket No. 101].

The Court notes again that Plaintiff submitted no objections to

these entries.  The Court has reviewed the time records and any

corresponding submissions to the Court and finds the time billed

to be reasonable and well-supported.

Having considered counsel's billing records and

Certification, the Court finds the hours billed by Defendant's

counsel in enforcing the Arbitration Award to be reasonable and

appropriate.  Additionally, Plaintiff has not objected to the

hourly rates charged by Mr. Hughes, Mr. Salad, or Ms. Newton.

The Court finds the hourly rates to be reasonable in light of

Mr. Hughes and Mr. Salad's extensive experience as attorneys and

their law firm's national presence and reputation.  See Hughes

Cert. ¶¶ 2-5, 9-10.  Accordingly, Defendant's request for

$10,597.50 in attorneys' fees is granted.

---

[10] The Court does not interpret the description for the
0.2 hour entry, "RECEIPT & REVIEW – NOTICE OF APPEAL", to mean
that counsel spent twelve minutes merely reading Plaintiff's
notice of appeal.  The Court finds that the total time billed by
counsel on March 10, 2017 for reviewing, analyzing, and
researching Defendant's legal options in light of Plaintiff's
notice of appeal--one hour--is reasonable.

In addition to attorneys' fees, Defendant requests a total
of $111.89 in litigation costs.  This amount consists of $6.46
incurred on January 5, 2017 for sending Plaintiff Mr. Hughes's
notice of appearance via certified mail; $12.50 incurred on
February 6, 2017 to obtain New Jersey business service and
corporation status reports for Tracee Edmondson's company, Total
Envolvement, Inc.; and $31.73 in UPS costs incurred on
February 7, 2017 for sending Defendant's opposition brief and
Cross-Motion to Confirm the Arbitration Award to Plaintiff.
See Feb. 3, 2017 Invoice and Mar. 8, 2017 Invoice, Hughes Cert.
Ex. A at 12, 14.  As with the attorneys' fees, Plaintiff has not
set forth any specific objections to these costs.  The Court
finds that the costs requested by Defendant are reasonable and
appropriate, especially in light of Plaintiff's pro se status.
Defendant's request for $111.89 in costs is granted.

In sum, for the foregoing reasons, the Court finds that
Defendant's request for attorneys' fees and costs is reasonable
and properly supported.  As the Arbitration Award provides that
Defendant shall be awarded any attorneys' fees and costs
incurred in connection with enforcement of the Arbitration
Award, the Court grants Defendant's application for attorneys'
fees and costs.

IV.    **CONCLUSION**

Accordingly, for the reasons set forth above, Plaintiff's Motion to Vacate the Arbitration Award is DENIED and Defendant's Cross-Motion to Confirm the Arbitration Award is GRANTED.  The December 27, 2016 Arbitration Award is CONFIRMED.  Defendant's application for attorneys' fees and costs, as provided in the Arbitration Award, is GRANTED.  Finally, to the extent that Plaintiff's "RESPONSE TO COURT'S MARCH 23, 2017 ORDER & MOTION FOR STAY PENDING APPEAL" may be construed as a motion to stay this action or the Arbitration Award pending appeal, the motion is denied as moot.  An appropriate Order shall issue on this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: <u>April 26, 2017</u>