IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SARA ANN EDMONDSON,<br><br>    Plaintiff,<br><br>        v.<br><br>LILLISTON FORD, INC. et al.,<br><br>    Defendants. | Civil No. 13-7704 (RMB/MJS)<br><br>**OPINION (SUBMITTED UNDER SEAL)** |

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon Defendant Lilliston Ford, Inc.'s ("Defendant" or "Lilliston Ford") Motion to Enforce Judgment against Plaintiff Sara Ann Edmondson ("Plaintiff" or "Edmondson"). [Docket No. 177]. For the reasons stated herein, the Court will grant, in part, that Motion.

I. **FACTUAL BACKGROUND**

The Court has previously detailed the background of this case [see Docket No. 111] and will now address only the facts relevant to Defendant's pending Motion.

This dispute was largely resolved through arbitration-- or, rather, it should have been. In December 2016, an American Arbitration Association ("AAA") Arbitrator denied Plaintiff's claims in their entirety, and gave Plaintiff a choice: either award Defendant the title to the disputed 2004 Lincoln LS

automobile or return $800.00 that she received as a trade-in credit. [See Docket No. 92, at ¶ 7]. The Arbitrator also held that Defendant was entitled to $35.00 per day in storage fees, beginning on January 31, 2017, for the Lincoln automobile until it received either the title or the refund, as well as reasonable attorneys' fees and cost incurred in enforcing the award. In response, Plaintiff filed a Motion to Vacate the Arbitration Award with this Court. [Docket No. 87].

In April 2017, the Court denied Plaintiff's motion and entered judgment in favor of Defendant and against Plaintiff, affirming the Arbitrator's Award requiring Plaintiff to pay storage fees of "$35.00 per day to Defendant from January 31, 2017 . . . until clear title is obtained by Defendant or the 2004 Lincoln LS is removed from Defendant's property and premises." [Docket No. 112, at 2-3]. The 2017 Order also affirmed the Arbitrator's award that Plaintiff must "execute such documents as shall vest clear title to the 2004 Lincoln LS in Defendant or refund Defendant the $800.00 trade-in value," and must reimburse Defendant for its reasonable attorneys' fees-- which then totaled $10,709.39. [Id.].

Thereafter, Plaintiff appealed this Order, [Docket No. 113] and the Third Circuit affirmed the Court's Judgment. [See Docket No. 138]. Plaintiff then filed a Motion to Disqualify the undersigned pursuant to Federal Rule of Civil Procedure 60.

2

[Docket No. 147]. The Court denied this motion, [Docket No. 149] and Plaintiff appealed. [Docket No. 149]. Again, the Third Circuit affirmed this Court's decision. [Docket No. 157].

In March 2021-- nearly four years after the Court's Order affirming the Arbitration Award and three years after the Third Circuit affirmed that Order-- Defendant was forced to file the current motion to enforce judgment, because Plaintiff has refused to comply with the Court's earlier Orders.

II. **ANALYSIS**

Throughout this litigation, Plaintiff has engaged in a pattern of contumacious behavior. This Court first ordered Plaintiff to provide either the 2004 Lincoln's title or $800.00 to Defendant in April 2017. But Plaintiff's repeated attempts to flout this Court's Orders and avoid satisfying judgments entered against her have prolonged this case by several years-- even after accounting for Plaintiff's appeal of the Court's 2017 Order. Indeed, Plaintiff has a predictable leitmotif: file a motion to challenge some action, receive an adverse ruling, appeal, and repeat.

Defendant has labored for more than four years to obtain what it is lawfully entitled to. And now Defendant has filed an additional motion seeking relief that Plaintiff should have provided long before now. Plaintiff's appeals have failed, and she is required to abide by this Court's lawful orders.

Moreover, Plaintiff's inexcusable litigation practices are not limited to simply evading the Court's Orders. For example, Plaintiff has routinely filed Motions to Disqualify the undersigned due to her dissatisfaction with the Court's Orders and Opinions[1]. [See Docket Nos. 32, 51, 75, and 147]. In each of these motions, Plaintiff identified no examples of judicial bias and instead relied on "mere[] disagreements with the District Judge's rulings." Edmondson v. Lilliston Ford Inc., 767 F. App'x 388, 390 (3d Cir. 2019), cert. denied sub nom. Edmondson v. Lilliston Ford Inc., 140 S. Ct. 956 (2020), reh'g denied, 140 S. Ct. 2557 (2020). And although Plaintiff's motions-- and the appeals that followed-- were rejected, they have succeeded in prolonging this litigation and in preventing Defendant from receiving what it has been awarded. But this delay must end. Accordingly, the Court will now take a more active role in this matter to prevent Plaintiff from further abusing and making a mockery of the judicial system. In that regard, the Court turns to the issue of civil contempt.

A. **Civil Contempt**

This Court has the "inherent authority to hold persons in contempt." United States v. Harris, 582 F.3d 512, 514 (3d Cir.

---

[1] A party's motion to disqualify, or to otherwise request recusal, is not an abusive litigation practice. But when a party files these requests in response to unfavorable Orders, to prolong the litigation, or to frustrate an opposing party, the moving party is now attempting to abuse the legal system through disingenuous and frivolous filings.

4

2009). In a civil matter, the Court may impose civil contempt on a party "upon a finding that one has failed to comply with a valid court order." Id. Civil contempt is "primarily coercive in nature, and is designed to benefit a party that has complained to the court about the contemnor's recalcitrance." In re Grand Jury Investigation, 600 F.2d 420, 423 (3d Cir. 1979).

When the Court holds a party in civil contempt, it may order the confinement of that party. See generally id. (discussing confinement for civil contempt). Civil contempt proceedings do not require "safeguards of indictment and jury." Shillitani v. United States, 384 U.S. 364, 371 (1966). Instead, the Court may confine the contemnor without these traditional safeguards, because she "carr[ies] the keys of [her] prison in her own pocket." Harris, 582 F.3d at 514. Stated differently, the Court may impose confinement to coerce the contemnor's compliance with a legal order.

Here, civil contempt appears to be the Court's only option to ensure compliance with its previous Orders. Nevertheless, the Court will provide Plaintiff with one final chance. **PLAINTIFF SHALL EITHER PROVIDE CLEAR TITLE TO THE 2004 LINCOLN LS TO DEFENDANT, OR REPAY THE $800.00 TRADE-IN CREDIT SHE PREVIOUSLY RECEIVED, WITHIN 14 DAYS OF SERVICE OF THIS OPINION AND**

**ACCOMPANYING ORDER[2]. IF SHE FAILS TO DO SO, THE COURT WILL HOLD PLAINTIFF IN CIVIL CONTEMPT AND ORDER HER CONFINEMENT.** Defendant must promptly notify the Court when it receives the title or refund from Plaintiff. If Plaintiff does not provide the title or refund within 14 days, Defendant shall promptly notify the Court via ECF.

This Opinion does not relieve Plaintiff of the storage fees that she owes to Defendant-- on the contrary, it reaffirms that Plaintiff owes these storage fees to Defendant, and it recognizes the additional daily fees that Plaintiff now owes. The Court notes, however, that these unpaid fees will not be a factor in imposing civil contempt.

B. **Attorneys' Fees, Costs, and Expenses**

Defendant also requests that the Court impose sanctions on Plaintiff pursuant to 28 U.S.C. § 1927, which provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

---

[2] This Opinion and its accompanying Order will remain sealed until the United States Marshals Service serves Plaintiff, and the Marshals submit proof of service. At that time, both the Order and Opinion will be unsealed.

28 U.S.C. § 1927. More specifically, Defendant asks the Court to declare Plaintiff a vexatious litigator, and award costs, expenses, and attorneys' fees as a result.

The Court will not impose § 1927 sanctions on Plaintiff at this juncture. The Third Circuit has previously questioned whether § 1927 applies to pro se parties. See Feingold v. Graff, 516 F. App'x 223, 229 n.9 (3d Cir. 2013) ("[W]e express doubt as to whether 28 U.S.C. § 1927 may be applied to non-lawyer, pro se litigants, see Sassower v. Field, 973 F.2d 75, 80 (2d Cir. 1992), and we need not decide this difficult issue now."). Although the Third Circuit has not definitively resolved this issue, the Court does not believe § 1927 is either appropriate or necessary in this matter.

Defendant is largely entitled to its requested relief without resorting to § 1927. The Arbitration Award stated that Plaintiff must "reimburse [Defendant] for reasonable attorney's fees and cost of Court incurred on account of enforcement of this Final Award to obtain clear title to the 2004 Lincoln and any other necessary enforcement [of] this Final Award." [Docket No. 92-4, at 35]. The Court also affirmed that Defendant was entitled to its "attorneys' fees and costs, as provided in the Arbitration Award." [Docket No. 112]. That Plaintiff has dragged this litigation on for four additional years after that Order does not

relieve Plaintiff of paying Defendant's attorneys' fees; to the contrary, Plaintiff now owes much more.

Any review of arbitration awards under the Federal Arbitration act is "extremely deferential." Metromedia Energy, Inc. v. Enserch Energy Servs., Inc., 409 F.3d 574, 578 (3d Cir. 2005). The Court may "disturb the award only when the arbitrator is 'partial or corrupt' or 'manifestly disregards, rather than merely erroneously interprets the law.'" Remote Sol. Co. v. FGH Liquidating Corp., 349 F. App'x 696, 699 (3d Cir. 2009) (quoting Metromedia Energy, 409 F.3d at 578). In addition, the Court may refuse "to enforce an award that violates law or a 'well-defined and dominant' public policy." Id. (quoting Exxon Shipping Co. v. Exxon Seamen's Union, 993 F.2d 357, 360 (3d Cir.1993)).

In its earlier Opinion, the Court evaluated the Arbitration Award as it concerned attorneys' fees, costs, and expenses. [See Docket No. 111, at 16-24]. It concluded that the "hours billed by Defendant's counsel in enforcing the Arbitration Award [were] reasonable and appropriate," [Id. at 23], and it noted no partiality or corruption that required review. The Court noted that "Plaintiff submitted no objections" to Defendant's billing records and certifications. [Id.] The Third Circuit considered this same issue on appeal, and affirmed the Court's judgment. Edmondson v. Lilliston Ford Inc, 722 F. App'x 251, 255 (3d Cir. 2018).

Having reviewed the Arbitration Award and Defendant's motion, the Court reaffirms its judgment that the Arbitration Award is valid, and that Defendant is entitled to its reasonable attorneys' fees in enforcing that award, as stated in the Arbitration Award. In its earlier Opinion, the Court concluded that these fees totaled $10,709.39. [Docket No. 111, at 23-24]. The Court will now consider whether Defendant is entitled to an additional $88,283.45, which it now seeks.

In support of Defendant's request for attorneys' fees, Defendant's Counsel Kevin J. Thornton submitted a certification detailing Defendant's attorneys' fees, costs, and expenses incurred in this case. [Docket No. 177-2]. Counsel contends that, "as a result of its continuous efforts to enforce the Arbitration Award and Order [Defendant] has been billed $84,834.00 in attorneys' fees, $612.45 in costs, and $2,837.00 for expenses for a total of $88,283.45" [Id.].

As an initial matter, the Court finds no grounds to limit Defendant's right to fees and expenses, per the Arbitration Award, to only the period before the Court's earlier Order. As noted above, the Arbitration Award establishes Defendant's entitlement to "reasonable attorney's fees and costs of Court incurred on account of enforcement of this Final Award to obtain clear title to the 2004 Lincoln." [Docket No. 92-4]. To date, Defendant has been unable to fully enforce the Arbitration Award

9

and obtain clear title to the 2004 Lincoln LS, and it has incurred additional expenses as a result. Under the Arbitration Award, those expenses are recoverable.

Along with his certification, counsel submitted detailed billing records for this case. These records state the exact services rendered, the attorney who performed such services, the date of such service, and the hours billed, for every legal service billed to Defendant since the Court's earlier Order. As with Defendant's previous motion concerning attorneys' fees [Docket No. 93], Plaintiff filed no objections to Defendant's requested fees[3]. Despite this, the Court has reviewed these billing records and finds nothing clearly objectionable or questionable.

The Court's assessment of counsel's billing records is no different now than it was in its April 2017 Opinion: Counsel again billed reasonable and properly supported fees to Defendant, and those fees were incurred in enforcing the Arbitration Award. Although the approximately $88,000.00 in fees and costs is a significant sum, this sum reflects four additional years of legal work between the Court's April 2017 Order and Defendant's current motion. This includes multiple appeals and motions, as well as

---

[3]  Plaintiff similarly failed to object to Defendant's first motion for fees, but the Court granted her a second opportunity to do so. [See Docket No. 104]. That Order informed Plaintiff of her right to object to the reasonableness of Defendant's requested fees and warned her of the consequences of failing to object. [Id.]. Nevertheless, Plaintiff filed no objections to Defendant's first motion, and she filed no objections to the current motion.

post-judgment discovery. Despite the large total sum of fees, this amount is reasonable.

Moreover, in reviewing the Court's original Opinion and Order, the Third Circuit determined that this Court "had no basis to disturb the arbitration award to the extent [the Arbitrator] granted fees and costs," Edmondson, 722 F. App'x at 255 n.5, and that the Court "may not award less in fees than requested unless the opposing party makes specific objections to the fee request." Id. at 255. The Court finds that Plaintiff was fully aware of the consequences of not objecting to Defendant's request for attorneys' fees [see Docket No. 104] and that she failed to do so. Thus, the Court finds no grounds to disturb the Arbitration Award, and it will not award less in fees than Defendant requested.

For each of these reasons, the Court re-affirms its judgment awarding reasonable attorneys' fees, costs, and expenses to Defendant, consistent with the Arbitration Award. The Court must be "extremely deferential" to the Arbitrator, and it has identified no facts to disturb the Arbitration Award. Moreover, Defendant's requested fees and expenses are reasonable on their face, counsel's billing calculation is properly supported, and Plaintiff has failed to object. Accordingly, the Court grants Defendant's request for fees and expenses in the sum of $88,283.45.

## C. The Court's Inherent Authority

Finally, the Court will exercise its inherent authority to "protect the courts from Plaintiff's oppressive and frivolous litigation [practices]." Perry v. Gold & Laine, P.C., 371 F. Supp. 2d 622, 629 (D.N.J. 2005) (citing Chambers v. NASCO, Inc., 501 U.S. 32 (1991)). At her February 2021 post-judgment deposition, Plaintiff suggested that she was now attempting to litigate this matter in state court. [See Docket No. 177-14]. Although Plaintiff refused to provide additional details of her alleged state court litigation, this Court cannot allow Plaintiff to continue her evasive litigation practices by using the state courts. Other than Plaintiff satisfying the judgments entered against her, his matter is fully resolved. Any attempt to involve the state courts in this matter would result only in further, and unnecessary, delay. Thus, the Court will also issue an order to show cause as to why Plaintiff should not be enjoined from pursuing, in any other forum, relief relating to the subject matter of this case.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Enforce Judgment [Docket No. 177] is GRANTED, IN PART. An appropriate Order accompanies this Opinion.

Dated: June 24, 2021                     s/ Renée Marie Bumb
                                         RENÉE MARIE BUMB
                                         UNITED STATES DISTRICT JUDGE