[Docket Nos. 231, 233 and 237]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SARA ANN EDMONDSON, <br><br> Plaintiff, <br><br> v. <br><br> LILLISTON FORD, INC. *et al.*, <br><br> Defendants. | Civil No. 13-7704 (RMB/MJS) <br><br> OPINION |

**APPEARANCES:**

Sara Ann Edmondson
71 Rainbow Trail
Pittsgrove, New Jersey 08318

*Pro Se Plaintiff*

COOPER LEVENSON, P.A.
By: Rona Zucker Kaplan, Esq.
1125 Atlantic Avenue, 3rd Floor
Atlantic City, New Jersey 08401

*Attorney for Defendant Lilliston Ford, Inc.*

**RENÉE MARIE BUMB, Chief United States District Judge:**

Justice delayed is justice denied. But not for Plaintiff Sara Ann Edmondson (Edmondson). Edmondson, appearing pro se, lost this lawsuit years ago — a dispute over a car that she purchased from the Defendant, Lilliston Ford, Inc., (Lilliston). The Court entered judgment against Plaintiff in 2017, and she now owes Defendant more than $140,000. Inflicting substantial fees and costs to Lilliston to defend the judgment in its favor, Edmondson is determined to delay the day of reckoning. That day has come.

After countless frivolous motions and motions for reconsideration, scores of unsuccessful motions to have the undersigned disqualified, including an unsuccessful appeal to the United States Court of Appeals for the Third Circuit, an unsuccessful writ of certiorari to the Supreme Court of the United States, and an unsuccessful request for a rehearing before the Supreme Court, Edmondson has run out of options in federal court. As this Court observed years ago, Edmondson "has a predictable leitmotif: file a motion to challenge some action, receive an adverse ruling, appeal, and repeat." *Edmondson v. Lilliston Ford, Inc.*, 2021 WL 2651143, at *1 (D.N.J. June 24, 2021). Still, undeterred, and in disregard of this Court's warning, Edmondson attempted to relitigate the same claims against Lilliston in New Jersey state court. The court dismissed all claims, with the New Jersey Appellate Division affirming.

All the while, Lilliston has incurred unnecessary costs and expenses to recover on its judgment against Lilliston, force her compliance with court orders, and fend off her frivolous motions. For years, Lilliston has attempted to recover on its judgment against Edmondson, but she has frustrated those efforts every step of the way. Lilliston now moves to execute its judgment on Edmondson's real property (Docket No. 231). Edmondson has opposed this motion by filing her own "motion to dismiss," which fails to address the merits of Lilliston's motion (Docket No. 233). Her motion is just another delay tactic to prevent Lilliston from obtaining justice and seeking redress for the harm Edmondson has caused. **Edmondson's litigation folly is over.**

For the below reasons, the Court **GRANTS** Lilliston's motion and **DENIES** Edmondson's motion.

I. BACKGROUND

This Court has written several opinions recounting the facts here and incorporates those decisions by reference. [*See, e.g.*, Docket No. 111.]

2

### A. Lilliston's Judgment against Edmondson

In 2012, Edmondson bought a pre-owned vehicle from Lilliston. *Edmondson v. Lilliston Ford, Inc.*, 2017 WL 1502788, at *1 (D.N.J. Apr. 26, 2017) (*Edmondson I*). As part of that sale, Lilliston accepted Edmondson's Lincoln automobile as a trade-in for an $800 credit. *Id.* Soon after, Edmondson allegedly experienced problems with the purchased vehicle, which Lilliston attempted to repair several times. *Id.* Edmondson, unsatisfied with the repairs, tried to return the vehicle. *Id.* Lilliston refused the return of the car and demanded that Edmondson either turn over the Lincoln's title or return the $800 trade-in credit and remove the Lincoln from Lilliston's lot. *Id.* Edmondson refused. *Id.*

Lilliston then sued Edmondson in New Jersey state court, but that case was dismissed without prejudice. *Id.* Later, Edmondson filed an arbitration demand before the American Arbitration Association (AAA) based on the car purchase agreement. For various reasons, AAA did not arbitrate the case then. *Id.* at *2.

Edmondson then sued Lilliston here. In a ten-count complaint, Edmondson claimed the car dealer violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, the Federal Odometer Act, 49 U.S.C. § 32704 *et seq.*, and New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq*. *Id.* She also raised several state common-law claims against Lilliston such as breach of contract, fraud, and the like. *Id.* At every turn of this case, Edmondson sought arbitration of her dispute and moved to compel it. *Id.* at *2-3. The Court granted her request in 2016. *Id.*

After a hearing in 2016, the arbitrator dismissed **all** of Edmondson's claims, finding that she "failed to prove any cause of action upon which relief could be granted." *Id.* at *4. **The arbitrator ordered Edmondson to provide Lilliston the Lincoln's title or refund the $800 trade-in credit and remove the car from Lilliston's property.** *Id.* **If Edmondson failed**

3

**to do either, the arbitrator ordered her to pay Lilliston a $35 per day storage fee for every day the Lincoln remained on Lilliston's lot.** *Id.* **The arbitrator also ordered Edmondson to reimburse Lilliston for any attorneys' fees and costs it incurred to enforce the arbitration award.** *Id.*

Despite having urged this Court to order arbitration, Edmondson switched gears and moved to vacate the arbitration award claiming "corruption, fraud, or undue means." *Id.* at *1. The Court declined to vacate the award, confirmed it (as requested by Lilliston), and ordered Edmondson to reimburse Lilliston for its attorneys' fees and costs incurred to enforce the award (about $10,700). *Id.* at *8-9. Edmondson appealed that decision, but the United States Court of Appeals for the Third Circuit affirmed this Court's ruling. *Edmondson v. Lilliston Ford, Inc.*, 722 F. App'x 251, 255 (3d Cir. 2018) (*Edmondson II*).

Having lost before the arbitrator, this Court, and the Third Circuit, Edmondson's leitmotifs began: seek to have the undersigned disqualified, lose, appeal, and lose again. She filed many motions to disqualify this Court, which were all denied with the Third Circuit affirming. [See Docket Nos. 142, 145, 147, 149, 151, 152; 167; *see also Edmondson v. Lilliston Ford, Inc.*, 767 F. App'x 388, 389 (3d Cir. 2019) (*Edmondson III*). Edmondson even took her case to the Supreme Court, which twice refused to hear her complaints. 140 S. Ct. 956 (2020), *reh'g denied*, 140 S. Ct. 2557 (2020). As noted, by 2020 Lilliston had a judgment against Edmondson for over $10,000. Despite the arbitration award against her (which the Court confirmed and the Third Circuit affirmed), **Edmondson still refused to provide Lilliston with the Lincoln's title or return the $800 trade-in credit and remove the Lincoln from Lilliston's lot.**

    B. **Edmondson's Mockery of the Judicial System as Lilliston Attempted to Collect on the Judgment**

4

For years, Lilliston sought post-judgment discovery from Edmondson. [Docket No. 120.] Lilliston had served an information subpoena on Edmondson seeking information on her assets. [*Id.*] Unsurprisingly, she refused to comply. [*Id.*] Lilliston moved to compel Edmondson to produce post-judgment discovery, which the Court granted, in part. [Docket No. 134.] In doing so, the Court agreed to stay Lilliston's request for post-judgment discovery if Edmondson posted a bond. [*Id.*] If, however, Edmondson failed to post a bond, then Edmondson had to produce the requested post-judgment discovery (the First Post-Judgment Discovery Order). [*Id.*] Edmondson, however, never posted a bond or produced the ordered discovery.

As a result of Edmondson's defiant failure to comply with the First Post-Judgment Discovery Order, Lilliston was forced to file a second motion for post-judgment discovery and a motion to hold Edmondson in contempt. [Docket No. 172.] Once again, the Court granted Lilliston's request, in part. [Docket No. 175.] The Court ordered Lilliston to serve its post-judgment discovery again, and ordered Edmondson to produce the requested documents and appear for a deposition (the Second Post-Judgment Discovery Order). [*Id.*] The Court reserved on Lilliston's motion to hold Edmondson in contempt. [*Id.*]

Edmondson provided some information to the post-judgment discovery requests and, under pain of contempt, appeared for a deposition. [Docket No. 177; *see also* Certif. of Kevin J. Thornton, Esq. (Thornton Certif.) ¶ 7, Ex. B (Deposition Transcript of Edmondson) (Docket No. 177-14).] When asked why she had not produced all the required discovery or pay the required storage fees—even after the Supreme Court refused to hear her case, Edmondson offered the same response: the case is not resolved. [Thornton Certif. ¶ 7, Ex. B (Tr. 11:4 to 23, 12:1 to 5).] During her deposition, Edmondson testified that her only sources of income are social security benefits and a New Jersey state pension. [*Id.* (Tr. 19:8 to 16).]

She also denied having any jewelry, valuable coins, or artwork. [*Id.* (19:25 to 20:19, 22:22 to 25).] She admitted to owning the 2012 Ford Focus—the car at the center of this dispute—but claimed "it's not worth it." [*Id.* (Tr. 21:5 to 7).]

Following the deposition, Lilliston again moved to enforce its judgment against Edmondson for storage fees, attorneys' fees, and other costs, and moved to hold Edmondson in contempt for violating the Court's Post-Judgment Discovery Orders. [Docket No. 177.] Edmondson still had not turned over the Lincoln's title, returned the $800 trade-in credit, or removed the Lincoln from Lilliston's lot and thus, the storage fees had ballooned to over $50,000.

The Court again granted Lilliston relief, entering judgment against Edmondson and in Lilliston's favor this time for over $144,000 (over $55,000 in storage fees and over $88,000 in attorneys' fees). [Docket No. 182.] The Court again ordered Edmondson to provide Lilliston with the Lincoln's title or reimburse the dealer the $800 trade-in credit. [*Id.*] If Edmondson again failed to comply, the Court warned her she would be held in civil contempt and confined. [*Id.*] In addition, the Court ordered Edmondson to show cause why the Court should not preclude her from seeking any relief, in any forum, relating to this case. [*Id.*] When issuing that order, the Court observed that:

> Throughout this litigation, [Edmondson] has engaged in a pattern of contumacious behavior. This Court first ordered [Edmondson] to provide either the 2004 Lincoln's title or $800.00 to [Lilliston] in April 2017. But [Edmondson's] repeated attempts to flout this Court's Orders and avoid satisfying judgments entered against her have prolonged this case by several years—even after accounting for [Edmondson's] appeal of the Court's 2017 Order. Indeed, [Edmondson] has a predictable leitmotif: file a motion to challenge some action, receive an adverse ruling, appeal, and repeat.

*Edmondson v. Lilliston Ford, Inc.*, 2021 WL 2651143, at *1 (D.N.J. June 24, 2021) (*Edmondson IV*). Having reached what it thought was the end of this case, the Court entered a preclusion

6

order barring Edmondson "from filing any further actions relating to the subject matter of this case, without first obtaining permission to do so, unless [Edmondson] is represented by counsel." [Docket No. 190.] The Court entered the preclusion order because Edmondson continued to attempt to relitigate claims and rehash arguments this Court and the Third Circuit had rejected. Clearly, This Court had wasted valuable time and judicial resource to address Edmondson's many frivolous motions.

Under pain of being held in contempt and confined, Edmondson provided Lilliston with the Lincoln's title in 2021—years after she was ordered to do so. [Docket Nos. 185-86.] Still, undeterred by this Court's preclusion order, and indeed, in direct contravention of it, Edmondson sued Lilliston in New Jersey state court raising the **same** claims she had brought in the arbitration held years ago. *Edmondson v. Lilliston Ford, Inc.*, 2023 WL 5256013, at *3 (N.J. Super. Ct. App. Div. Aug. 16, 2023) (*Edmondson V*). Forced yet again to defend itself, Lilliston moved to dismiss Edmondson's state court action, in part, because of this Court's preclusion order. *Id.* The state trial court dismissed Edmondson's lawsuit, finding all her claims barred by the res judicata and collateral estoppel doctrines. *Id.* Predictably, Edmondson appealed. *Id.* at *1. The New Jersey Appellate Division affirmed the trial court's decision, finding Edmondson was attempting to relitigate the "same claims" the arbitrator previously considered and rejected. *Id.* at *4-5.

Back in federal court, Lilliston moved for sanctions against Edmondson and for attorneys' fees arguing she violated the preclusion order by filing the state court litigation. [Docket No. 199.] Following that motion, the Magistrate Judge scheduled several status conferences and **Edmondson failed to appear**. [Docket Nos. 202-16.] Reluctant to do so, this Court denied Lilliston's sanctions motion finding the state court was the better venue to address sanctions. [Docket No. 218.] Yet the Court issued Edmondson a "stern warning"

7

that she was leaving the Court no other option but to hold her in civil contempt and confine her. [*Id.*] In doing so, the Court observed:

> To say that [Edmondson] has and continues to make a mockery of our judicial system is an understatement. For years, [Lilliston] has sought redress for damages caused by [Edmondson's] failure to return an auto for which she failed to pay. Delay after delay, appeal after appeal, thumbing her nose at the Courts each step of the way, [Edmondson] has prevented [Lilliston] from collecting on its judgment for more than $140,000. . . . Enough, no more, this Court says.

[*Id.*] Despite this Court's warning, and, indeed, in direct defiance of it, Edmondson failed to appear at a hearing the Magistrate Judge ordered.[1] [Docket Nos. 216, 223.]

### C. Lilliston's Request to Execute the Judgment on Edmondson's Real Property

Back again before this Court, Lilliston now moves to execute its judgment against Edmondson's real property (the Motion). [Docket No. 231.] As set forth in its moving papers, throughout the years, Lilliston has subpoenaed many banks seeking to unearth Edmondson's personal assets. [Certif. of Laura Newton (Newton Certif.) ¶¶ 9-10, 19-20 (Docket No. 231-3).] Lilliston issued writs of execution on the one bank that responded affirmatively to the subpoenas, as well on her personal property located in her home. [*Id.* ¶¶ 10, 12-16.] But Lilliston was only able to recover about $9,200 from Edmondson's bank accounts. [*Id.* ¶¶ 13, 15; *see also* Docket No. 165.]

Lilliston again issued a writ of execution on Edmondson's bank, but the bank informed Lilliston that "the total amount of her checking and savings accounts was less than one social security payment, which she receives, and which is not able to be levied." [Newton Certif. ¶ 23.] Lilliston counsel also hired a private investigator to determine whether Edmondson had

---

[1] This matter is before the Honorable Matthew J. Skahill, U.S.M.J, as to whether Edmondson should be held in civil contempt for failing to appear at the show cause hearing the Magistrate Judge ordered. [Docket Nos. 216, 223.]

additional personal assets, but the investigator could not uncover any other assets. [*Id.* ¶ 24.] Lilliston again issued a writ of execution on Edmondson's bank. [*Id* ¶¶ 25-26; see also Docket Nos. 230, 235, and 237].

**To date, Edmondson owes over $145,000 on the judgment, excluding interest. But there are no assets.** [*Id.* ¶ 27.]

### D. Edmondson's "Motion to Dismiss" and Opposition to the Motion

Predictably, as her leitmotif, Edmondson filed a motion to dismiss in her "opposition" to the Motion.² [Docket Nos. 232-233.] As best the Court can tell, Edmondson contends that when issuing the preclusion order—barring her from filing any action relating to this case—the Court somehow deprived her of her civil rights. [Edmondson Mem. of Law in Support of Mot. to Dismiss 2-3 (Edmondson Br.) (Docket No. 232-1).] According to Edmondson, when the Court administratively terminated her summary judgment motion pending the arbitration, *see* Docket No. 74, the Court declined to exercise supplemental jurisdiction over her state-law claims, *see* Edmondson Br. at 2-3. By declining to exercise supplemental jurisdiction, the argument goes, Edmondson was free to pursue her state-law claims against Lilliston in state court, and this Court's preclusion order requiring her to seek permission to file her state-law claims in state court violated her civil rights. [*Id.*] It is another frivolous motion. Period.

## II. DISCUSSION

### A. Lilliston is Entitled to Enforce the Judgment against Edmondson's Real Property

Under Federal Rule of Civil Procedure 69(a)(1), "[a] money judgment is enforced by a writ of execution" in "accord with the procedure of the state where the court is located." *Aruanno v. Caldwell*, 689 F. App'x 152, 153 n.1 (3d Cir. 2017). Before executing a judgment

---

² Edmondson raises the same arguments in her "motion to dismiss" and her opposition to the Motion.

9

on real property, New Jersey law requires the judgment-creditor to first attempt to satisfy the judgment from the debtor's personal property. N.J. Stat. Ann. § 2A:17-1; *see also* N.J. Ct. R. 4:59-1(d)(1) ("The execution shall be made out of the judgment debtor's personal property before the judgment-creditor may proceed to sale of the debtor's real property.") Indeed, "[a]n execution sale of realty will not be valid unless the creditor has first sought resort to the debtor's personalty." Pressler & Verniero, *Current N.J. Court Rules*, cmt. 1.2.2 on N.J. Ct. R. 4:59-1 (2023). The judgment-creditor must make a good-faith effort to locate the debtor's personal property. *In re Marvaldi*, 99 F. App'x 414, 416 (3d Cir. 2004). "[T]he test is not whether all possible measures to locate personalty have been undertaken, but rather has the judgment creditor exerted 'reasonable efforts' in good faith to locate personal property." *Borromeo v. DiFlorio*, 976 A.2d 388, 395 (N.J. Super. Ct. App. Div. 2009) (quoting *In re Mariano*, 339 B.R. 344, 350 (Bankr. D.N.J 2006)).

Here, the Court finds that Lilliston has made more than a reasonable effort to locate Edmondson's personal property. Lilliston has subpoenaed many financial institutions for Edmondson's bank accounts; only one bank responded. [Newton Certif. ¶¶ 9-10, 19-20.] Lilliston recovered a small sum from those accounts that satisfied only a fraction of the judgment. [*Id.* ¶¶ 12-13, 14-15.] Edmondson lacks sufficient funds in her accounts to satisfy the judgment's remainder. [*Id.* ¶¶ 21-23.] Lilliston also went the length of hiring a private investigator to locate Edmondson's property, but the investigator could not locate any assets. [*Id.* ¶ 24.] In addition, Lilliston conducted a title search on Edmondson's real property. [*Id.* ¶ 11.] And Edmondson, during her deposition, confirmed she has no other income to satisfy the judgment other than her social security benefits and a state pension, denied having other personal assets like jewelry, and acknowledged her car is "not worth it." [Thornton Certif. ¶ 7, Ex. B (Tr. 19:8 to 16, 19:25 to 20:19, 21:5 to 7, 22:22 to 25).]

Given the above, the Court has no difficulty in finding that Lilliston has made good faith and reasonable efforts to locate Edmondson's personal property. *Borromeo*, 976 A.2d at 395 (finding plaintiff made reasonable efforts to locate defendant's personal property before executing on defendant's real property where, among other things, plaintiff hired a private investigator, conducted a judgment search, and served post-judgment discovery). Indeed, Edmondson's denial of possessing any personal assets "alone will ordinarily satisfy the creditor's obligation to proceed first against personalty before levying upon real estate." Pressler & Verniero, *Current N.J. Court Rules*, cmt. 1.2.2 on N.J. Ct. R. 4:59-1 (2023); *see also Pojanowski v. Loscalzo*, 603 A.2d 952, 953 (N.J. 1992) (finding plaintiff made a good-faith effort to locate defendant's personal property where plaintiff moved to compel defendant' post-judgment deposition, and defendant responded "negatively or evasively" to questions on her personal assets). And Edmondson has not even remotely suggested that if Lilliston searched further, it would uncover personal property to satisfy the judgment. *Pojanowski*, 603 A.2d at 953 (affirming order allowing plaintiff to levy on defendant's real property since "defendant does not suggest that if an additional inquiry were mounted to find personal assets belonging to her, or if a writ of execution were issued to direct the sheriff to levy on personal assets, a different result would obtain"). Thus, the Court will entered an order permitting Lilliston to execute the judgment on Edmondson's real property.

### B. Edmondson's "Motion to Dismiss" and Opposition to the Motion are Meritless

Edmondson's attempt to dismiss this action and oppose Lilliston's Motion are meritless and warrant little discussion. Edmondson's opposition does not address Lilliston's request to execute the judgment on her real property, or Lilliston's efforts to satisfy the judgment through her personal assets. Instead, she accuses this Court of depriving her of her civil rights, and conspiring with others to do so. Her argument is based on this Court's

supposed refusal to exercise supplemental jurisdiction over her state-law claims. [Edmondson Br. at 2-3.] Unsurprising, this argument is not new, and Edmondson has raised it before. [Docket Nos. 188, 192, 201.] The Court will once again outright reject those arguments.

### III. CONCLUSION

For the above reasons, the Court **GRANTS** Lilliston's motion to execute its judgment on Edmondson's real property (Docket No. 231) and **DENIES** Edmondson's motion to dismiss (Docket No. 233).

An accompanying Order as of today's date shall issue. Given this case's history and Edmondson's conduct, the Court respectfully requests the Third Circuit to expeditiously decide Edmondson's inevitable appeal of this Court's decision. For years, Lilliston has been unable to recover on its judgment because of Edmondson's conduct and has incurred even more expenses and attorneys' fees by having to fend off her frivolous motions and seek judicial relief when Edmondson refuses to follow this Court's orders. Short of holding Edmondson in civil contempt and confining her, this Court has exercised all allowable means to control this litigation and bring it to a close. To further delay Lilliston's ability to obtain redress and recover on its judgment is to deny long-awaited justice.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

Dated: October 19, 2023